UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GARY HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-01365 RBW |
| | ) | |
| HENRY M. PAULSON, JR., | ) | |
| Secretary of the Department | ) | |
| of the Treasury, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER TO THE EASTERN DISTRICT OF VIRGINIA AND
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* ("Title VII").  Plaintiff alleges that he was not selected for two positions in the Internal Revenue Service because of his race and in retaliation for his prior activity under Title VII.  Plaintiff further alleges that events in connection with the selection process for the two positions forced him to leave the agency, i.e., that he was constructively discharged.  As we explain below, none of the actions underlying plaintiff's claims occurred in the District of Columbia, and the records related to the actions were not maintained in the District of Columbia.  The proper venue for this action is the Eastern District of Virginia, where the challenged selections were made and where plaintiff would have worked had he been selected for the positions.

Because  venue is improper in the District of Columbia, defendant moves, pursuant to Fed. R. Civ. P. 12(b)(3), that the Court dismiss the complaint or, in the interest of justice, transfer the case

to the Eastern District of Virginia, where venue is proper.[1]  This Court has authority under 28 U.S.C. § 1406(a) to make such a transfer.

<u>Factual Background</u>

At the time of the events giving rise to this case, plaintiff was employed at the IRS's facility at New Carrollton, Maryland.  Exhibit A hereto (first page of plaintiff's resume) and Exhibit B hereto (declaration of Chadwick C. Pickeral, paragraph 2).  During 2005, the IRS posted vacancy announcements for two positions at the agency's offices in Arlington, Virginia: an industrial hygienist and an environmental protection specialist.  When seeking to fill a vacancy, the interested office works with the IRS's human resources staff, which prepares and issues the vacancy announcements and then collects the applications that are submitted in response to the postings and determines which of the applicants are qualified for the vacancies.  Exhibit C hereto (declaration of Chief of Recruitment for the IRS), paragraphs 2 through 4.  A package of the applications of the qualified persons is then forwarded to the relevant office, here, the Arlington, Virginia, office.  The IRS's human resources offices providing support for the two vacancy announcements at issue were the Atlanta and Kansas City offices. Exhibit D hereto (declaration of John C. Reagan), paragraph 5.[2]

John C. Reagan, whose duties include management of the IRS's Occupational Safety and Health Program, was the recommending official for the two vacancy announcements.  William Harriger, the IRS's Acting Associate Director for Logistics, was the selecting official.  Exhibit D,

_____

[1]  Defendant reserves all other defenses that he may have under Fed. R. Civ. P. 12(b)(6) or otherwise.

[2]  As explained in Exhibit C, declaration of Delores Lovejoy, when the Atlanta IRS recruitment branch is overloaded, the Kansas City Internal Employment Office helps out.  Exhibit C, paragraph 6.

paragraph 6.  Both men worked in the Arlington office.  Id.  After the selections were made for the two positions, the officials at the Arlington office returned the selection packages relating to the positions to the IRS's human resources offices, in Atlanta and/or Kansas City.  Id., paragraph 6 and 9.  There was no involvement by IRS officials in Washington, D.C., in the selection process for the two positions.  Id., paragraph 7.  And had Mr. Hamilton been selected for either of the two positions, he would have worked at the Arlington, Virginia, office.  Id., paragraph 8.

The official personnel files for IRS employees are maintained centrally at a facility outside Kansas City.  Id., paragraph 9.  The vacancy announcement/promotion packages for the industrial hygienist and environmental protection specialist are maintained at the IRS's Atlanta and/or Kansas City offices.  Exhibit C, paragraphs 5 and 7.  At the New Carrollton, Maryland, facility, the only personnel records that were maintained were  "drop" files for each employee, which contained an employee's recent performance evaluations, training records, reprimands, and commendations.  No personnel records relating to the New Carrollton employees were maintained in Washington, D.C. Exhibit B, paragraphs 3 and 4.

<u>Argument</u>

Discrimination claims against a federal employer that are based on race and retaliation are governed by the venue provision set forth in Title VII.  Archuleta v. Sullivan, 725 F.Supp. 602, 604 (D.D.C. 1989).  Venue in a Title VII action is governed by 42 U.S.C. § 2000e-5(f)(3), which provides three specific locations for venue: (1) the district in which the alleged discrimination occurred; (2) the district where the relevant employment records are maintained and administered; or (3) the district where plaintiff would have worked but for the alleged unlawful discrimination and retaliation.  The statute also provides for a fourth location should venue not be possible under the

first three possibilities: the district in which the head of the relevant government agency  has his or her principal office.  This last venue provision is used principally by federal employees who are employed, or who apply for employment, in overseas locations.  Since venue in this case is available under one or more of the first three options, it is not appropriate to proceed to the fourth option.

None of the alleged unlawful discriminatory and retaliatory employment practices occurred in the District of Columbia, and the records relating to the selections at issue in this case are not stored in Washington, D.C.  Plaintiff has alleged no facts or circumstances that would support venue in the District of Columbia under the explicit venue provision of Title VII.  A plaintiff bears the burden of establishing that venue is proper, once an objection is made to it.  15 Wright, Miller & Cooper, <u>Federal Practice And Procedure: Jurisdiction</u> § 3826 at 259-60.  It should be noted that 28 U.S.C. § 1406(a) provides, as an alternative to dismissal for improper venue, that in the interest of justice a case can be transferred to any district in which it could have been brought.  Here, the alleged discriminatory conduct occurred in the Eastern District of Virginia, and had plaintiff been selected for one of the positions, he would have worked in Arlington, Virginia.  It follows that venue for the case is proper in that jurisdiction.

For the reasons set forth above, this action should be dismissed or, in the alternative, transferred to the Eastern District of Virginia.  In the event that the Court decides to transfer this case, the Court should grant defendant twenty days from the date the case is received in that district to answer or otherwise respond to the complaint, so that the United States Attorney's Office for the

Eastern District of Virginia will have an opportunity to familiarize themselves with the case.

Respectfully submitted,

JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

/s/

FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4th Street, N.W., E-4110
Washington, D.C. 20530
202.514.7201

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GARY HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-01365 RBW |
| | ) | |
| HENRY M. PAULSON, JR., | ) | |
| Secretary of the Department | ) | |
| of the Treasury, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

UPON CONSIDERATION of the motion by defendant to dismiss or, in the alternative, to transfer this case to the Eastern District of Virginia, it is this _____ day of _____, 2007,

[ORDERED that this case is dismissed because it was filed in an improper venue.]

[ORDERED that this case is transferred to the Eastern District of Virginia, where venue is proper, and it is further

ORDERED that defendant shall have twenty days from the receipt of this case in the Eastern District of Virginia to answer or otherwise respond to the complaint.]

UNITED STATES DISTRICT JUDGE

Copies to the pro se plaintiff
and to counsel for defendant

CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing motion to dismiss or, in the alternative, to transfer this case to the Eastern District of Virginia to be served by first-class mail, postage prepaid, this 25th day of October, 2007, on:

Mr. Gary Hamilton
P.O. Box 1201
Waldorf, MD 20604

/s/
Fred E. Haynes, D.C. Bar # 165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
(202) 514-7201

**Announcement No. DEU-AT5RF100E**
**Title: INDUSTRIAL HYGIENIST**

**Gary HAMILTON**

**12304 Burning Oak Court**
**Waldorf, MD 20602**
**Daytime: 202-283-7072   Evening:** █████████
**EMAIL Address: "Gary.Hamilton@irs.gov"**

**HIGHEST GRADE LEVEL HELD: GS-0690-13   10/1991 – 10/2001**

**Objective**

I desire to utilize my skills and abilities in managing a comprehensive industrial
hygiene program within a federal government agency.

**Employment**

INDUSTRIAL HYGIENIST, 10/2001 to PRESENT, GS-12
U.S. Internal Revenue Service,
New Carrollton Territory, Real Estate Branch, Strategy and Portfolio Section,
Safety and Health Team
5000 Ellin Road
Lanham, MD  20706
Mr. Chadwick Pickeral,  202-283-7181   Permission to Contact

Duties and Accomplishments:
Serve as the Services New Carrollton and the Washington DC Territory
industrial hygiene technical subject matter expert for developing, directing and
administering IRS's policy and procedures governing occupational safety and
health issues and environmental protection matters.  Additionally, I provide safety
engineering, industrial hygiene, fire safety and environmental protection technical
guidance and consultant service to principal operating components. Manages
information system databases and summary data; analyze causal factors of
accidents, injuries and illness to determine problem areas; and, coordinates
oversight and distribution of Area-wide policies and procedures pertaining to
safety, occupational health, and environmental protection.

Hours per week: 40


INDUSTRIAL HYGIENIST,  10/2000 to 10/2001, GS-13
OFFICE OF THE UNDER SECRETARY OF DEFENSE (OUSD)
Office of Safety and Health Policy,



EXHIBIT
A

199

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY HAMILTON,                          )
                                        )
                 Plaintiff,             )
                                        )
        v.                              )      Civil Action No. 07-1365 RBW
                                        )
HENRY M. PAULSON, JR.,                  )
Secretary of the Department             )
of the Treasury,                        )
                                        )
                 Defendant.             )
                                        )

## DECLARATION OF CHADWICK C. PICKERAL

· I, Chadwick C. Pickeral, declare as follows:

1. I am currently employed by the Internal Revenue Service as a policy analyst in Strategy and Finance, Wage and Investment, Atlanta, Georgia.

2. From September 2004 to September 2005, I was the supervisor of Support Services at the IRS's New Carrollton, Maryland, facility. During part of that time period, Gary Hamilton was under my supervision.

3. At the New Carrollton, Maryland, facility, the only personnel records that we maintained were what we called the "drop" file, which contained an employee's recent performance evaluations, training records, reprimands, and commendations.

4. I am not aware of any personnel records relating to the New Carrollton employees that

DEPOSITION
EXHIBIT
B

were maintained in Washington, D.C.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 10/24/07

CHADWICK C. PICKERAL

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GARY HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1365 RBW |
| | ) | |
| HENRY M. PAULSON, JR., | ) | |
| Secretary of the Department | ) | |
| of the Treasury, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF DELORES LOVEJOY

I, Delores Lovejoy, declare as follows:

1. I am currently acting on a detail as the Chief of Recruitment for the Internal Revenue Service. Our office is in Atlanta, Georgia . I have been working in recruitment for the IRS since September 1, 2007.

2. The IRS has centralized the recruitment process at our Atlanta office. We are advised by other IRS components when a recruitment action is to be initiated. We then prepare a vacancy announcement, which may seek applications only from within the IRS or from outside the IRS or from both internal and external sources.

3. We are responsible for posting the vacancy announcements on the internet and processing the applications received in response to the announcement. This process involves determining which of the applicants meet the qualifications set out in the vacancy announcement.

4. Once the eligibles are determined, we send to the office seeking the recruitment a package consisting of a certificate of eligibles and their applications for the position. That office is then responsible for selecting a person for the job from among the list of the eligibles.



DEPOSITION
EXHIBIT
C

5. After the selection is made, the name of the person selected, together with the package of material sent to the selecting office, is returned to my office. We retain these documents.

6. When the number of recruitment actions exceeded my office's ability to handle them in a timely fashion, some of the actions were referred to IRS's Internal Employment Office in Kansas City. If Kansas City handles the recruitment, they follow the steps set out in paragraphs 2 through 5 above.

7. The procedures set out in paragraphs 2 through 6 was followed in the years 2005 and 2006.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: **10/25/07**

DELORES LOVEJOY

FROM BETA                         (WED) 10. 24' 07 12:31/ST. 12:31/NO. 4861391344 P  2

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

GARY HAMILTON,                          )
                                        )
        Plaintiff,               )
                                        )
    v.                          )     Civil Action No. 07-01365 RBW
                                        )
HENRY M. PAULSON, JR.,                  )
Secretary of the Department             )
of the Treasury,                        )
                                        )
        Defendant.              )
_____ )

### DECLARATION OF JOHN C. REAGAN

I, John C. Reagan, declare as follows:

1. I am employed by the Internal Revenue Service as a Supervisory Management and Program Analyst, IR-0343-3, in the office of Agency Wide Shared Services, Real Estate and Facilities Management, in Arlington, Virginia.

2. Among my duties, I am the manager of the IRS's Occupational Safety and Health Program. I have a staff of six individuals who work with me in the Arlington, Virginia, office. We support 35 other field safety officers who work throughout the continental United States. I have held this position since May 2004.

3. I am generally aware of the allegations of discrimination and retaliation made by Mr. Hamilton in this case. In the course of the administrative EEO process concerning Mr. Hamilton's complaint, I submitted a declaration addressing these allegations, a copy of which is attached hereto as Exhibit A. Specifically, I am aware that Mr. Hamilton alleges that he was the victim of race (African-American) discrimination and retaliation (for his earlier EEO activity)

1



FROM BETA                                              (WED)10. 24' 07 12:31/ST. 12:31/NO. 4861391344 P  3

when he was not selected for two positions for which vacancy announcements were issued in 2005, an Industrial Hygienist and an Environmental Protection Specialist. The two vacancy announcements were for positions on the staff of my office in Arlington, Virginia.

4. The Assistant United States Attorney responsible for this case has asked me to address certain issues that he believes are relevant to the legal determination of the proper venue for this case. Specifically, he has asked me to respond to the following questions: (1) where, in geographical terms, did the alleged discrimination/retaliation occur; (2) where are the relevant employment records, relating to plaintiff's non-selection for the two positions, maintained and administered; and (3) where would plaintiff have worked but for the alleged unlawful discrimination/retaliation.

5. When an office, such as the one I manage, seeks to recruit individuals, the office works with the IRS's human resources staff, which prepares and issues the vacancy announcements and then collects the applications that are submitted and determines which of the applicants are qualified for the vacancies. A package of the applications of the qualified persons is then forwarded to us at the Arlington, Virginia, office. The IRS's human resources offices providing support for the two vacancy announcements were, I believe, in Atlanta and Kansas City.

6. With regard to the filling of the vacancy announcements for the Industrial Hygienist and the Environmental Protection Specialist positions, I was the recommending official and William Harriger, the IRS's Acting Associate Director for Logistics, was the selecting official. Mr. Harriger also works in the Arlington office. After the selections were made for the two positions, we returned the packages relating to the positions to the human resources' offices.

2

7.  I have no knowledge of any involvement by IRS officials in Washington, D.C., in the selection process for the two positions. Had there been any such involvement, I am in a position where I would have learned of it.

8.  Had Mr. Hamilton been selected for either of the two positions, he would have worked at the Arlington, Virginia, office where I work.

9.  The official personnel files for IRS employees are maintained centrally in a suburb of Kansas City.  The only file maintained by the local office where an employee works is what is called an employee performance file, which contains the employee's recent performance appraisals, record of training, individual training plans, and any commendations received by the employee.  The vacancy announcement/promotion packages for the Industrial Hygienist and Environmental Protection Specialist are maintained at the IRS's Atlanta and/or Kansas City offices.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: _October 25, 2007_

JOHN C. REAGAN

3

DECLARATION

**SUBJECT:** **Discrimination Complaint of Gary Hamilton and Henry M. Paulson, Jr., Secretary of the Treasury, TD Case Number 06-2213M.**

**DECLARATION UNDER PENALTY OF PERJURY**
In accordance with the procedures of 28 U.S.C. 1746, I, John C. Reagan, the undersigned do hereby make the following declaration under penalty of perjury pertinent to the above stated subject:

**State your title, series, grade, duty location, and race. Have you had prior EEO activity?**

I am employed by Internal Revenue Service as a Supervisory Management and Program Analyst, IR-0343-3 in Agency Wide Shared Services, Real Estate and Facilities Management in Arlington, Virginia. My race is Caucasian. I have been the subject of other complaints and I haven't been called as a witness in a complaint. I have not filed a complaint myself.

**Briefly state your current duties and responsibilities as Chief, Safety and Mail Services, including the management official(s) to whom you report and how long you have held this position.**

I am the manager for the IRS Occupational Safety and Health Program managing a staff of six people assigned to headquarters and supporting 35 other field Safety Officers throughout the continental United States. I have held this position for a little over two years. I report to the Associate Director of Logistics and currently that is an Acting Associate Director, Debra L. Smedley. My manager of record is Gregg Adkins, but he is on a long term detail.

**Describe your professional relationship to the Complainant, Gary Hamilton, and the duration of the relationship.**

At the time I occupied this position, I had no professional relationship with Gary. Prior to coming to REFM headquarters, I was the REFM Territory Manager in Washington, D. C., from December 2001, to November 2003, and Gary worked for one of my section chiefs in Safety and Security, which was two levels of management removed from me.

**The Complainant alleges disparate treatment based on race and/or retaliation because of his prior EEO activities when the following events occurred:**

(1) On October 7, 2005, the Agency did not provide enough public notice on the Office of Personnel Management (OPM) USA Jobs website and the Internal Revenue Service (IRS) internal Career Opportunity Listing (COL) for a GS-0690-14, Industrial Hygienist

Page 1 of 8

112

DECLARATION

position, which was advertised under Vacancy Announcement Numbers (a) Internal
Announcement Number: 15-02-AT5G693; and (b) External Announcement: DEU-
AT5RF100E. Due to the short public notice the Complainant was denied the opportunity
to be considered for the position; which he alleges he was the most qualified;

(2) On October 7, 2005, the Agency did not provide enough public notice on the Office of
Personnel Management (OPM) USA Jobs website and the Internal Revenue Service
(IRS) internal Career Opportunity Listing (COL) for a GS-0018-14, Environmental
Protection Specialist position, which was advertised under Vacancy Announcement
Numbers (a) Internal Announcement Number: 15-02-AT5G693; and (b) External
Announcement: DEU-AT5RF100E. Due to the short public notice the Complainant was
denied the opportunity to be considered for the position; which he alleges he was the
most qualified. The positions were filled after he left the Service during December 2005;
and,

(3) During December 2005, the Complainant alleges he was forced to constructively
discharge himself from the Agency.

**Regarding the vacancy announcements cited in (1) and (2) above, state your
involvement in, or your knowledge of, them. Describe the events that led up to
the matter in chronological order.**

1.    Industrial Hygienist, GS-0690-14 position

I recall this vacancy announcement, as we announced it after losing someone to
retirement. We issued the announcement which opened on March 28, 2005 and
closed April 11,2005. Because it was a GS-0690 and that is a limited field for
consideration in terms of the skill and educational requirements, we announced it both
internally and externally.

My understanding of this package was that we had no internal applicants so that
package was closed. We had between 12 and 14 external candidates. Mr. Hamilton's
paperwork was timely received and he was one of those external candidates
determined to be highly qualified and he was ranked within this external package.

This announcement was run for the standard duration of time (two weeks) that
Personnel uses.

2. Environmental Protection Specialist, GS-0028-14

This announcement was made in support of a new program to REFM, and was
authorized for announcement at the beginning of the fiscal year. Because of the unique

Page 2 of 8

DECLARATION

skill set required to qualify, we announced this position both internally and externally. The position was announced both internally and externally in September, 2005.


**The Complainant alleges you held up the processing of the best qualified (BQ) certificate for several months (from July 2005 to December 2005). Please comment. Was the BQ held up and if so, why? Did you influence the issuance of the BQ list?**

The cycle time for the Industrial Hygienist package was extraordinarily long since it took several months to rank the package because of the size and availability of ranking officials. Once it was ranked, the issue was salary dollars to fill it. We went into a hiring freeze towards the end of the fiscal year because our function had a deficit in labor dollars. It wasn't until the freeze lifted and we had sufficient FTE's to fill the position that we went ahead and filled it.

**Did you hold up the processing of the BQ certificate until the Complainant left the Agency in December 2005?**

No, we did not. Whether or not he was within the Agency, he was considered as an external applicant. His leaving the Agency had no impact on his status as a candidate for the Industrial Hygienist position.

**The Complainant alleges you waited until he was forced out to select on recruitment certificate #15-02-ATG693. The promotion certificate indicates that William Harriger was the actual Selecting Official. Was Mr. Harriger acting on your behalf? If so, did you discuss the certificate and/or the candidates with Mr. Harriger prior to his making the selection?**

No, he was not acting on my behalf. Bill Harriger was the Acting Associate Director for Logisitics at the time of selection. We've had several Acting Directors in that position and it was under Bill's watch that the selection was made. I am the first line manager of the position being filled, and serve as the recommending official for promotion packages. For all REFM HQ vacancies in Logistics, the Associate Director is the selecting official.

Bill sat on the interview panel for this position and I was a member of the panel. The entire panel discussed who the best candidates were and I shared my thoughts on the candidates with Bill and he with me. He accepted my recommendations and signed the certificate.

We selected two candidates, Cynthia Duffield and David Mims in mid-December, 2005.

Page 3 of 8

DECLARATION

We convened a ranking panel once Personnel determines who the highly qualified candidates are. I believe Gary was on the highly qualified list and the ranking panel prepared a best qualified list from those candidates. Gary was not on the best qualified list and was therefore not interviewed for the position.

**Have you filled other Industrial Hygienist grade 14 positions during the past 2 years? If so, when, how many, and who (full name) was selected? Were you the Selecting Official and if not, do you recall who was?**

I had hired a GS-0028-14 position Environmental Protection Specialist who reported in Mid- January 2006. The candidate selected, Paul Brown, resigned suddenly effective March 9, 2006.

Cynthia Duffield, who we had selected for the Industrial Hygienist position, approached me about being reassigned into the EPS position. We looked at her qualifications, we were just beginning the program, and the candidate selected had resigned suddenly, so we decided to move her into the EPS position to allow for program development without a further recruitment bsed lapse in filling the position.

In order to then backfill Ms. Duffield's position as an Industrial Hygienist, I went back to Personnel in mid- March 2006 and asked to consider the remaining candidates from the original certificate for the Industrial Hygienist position. This was authorized and we selected Sandra Gross. Ms. Gross was the next highest score on the best qualified list and she had given the strongest interview of the remaining best qualified candidates in the certificate. Ms Gross reported in April, 2006.

2.    Environmental Protection Specialist, GS-0028-14 position

The 0028 experience is specialized and requires special qualifications, so we announced this position internally and externally. This announcement was run for timeframes that Personnel routinely uses.

We had no internal candidates, but there were seven original candidates on the external certificate. We had four candidates that made the best qualified list, interviewed all four and selected Paul Brown. Mr. Hamilton was not an applicant. Then, as stated earlier, Mr. Brown suddenly resigned and we reassigned Cynthia Duffield into the position.

I believe between the Industrial Hygienist position selections, in mid-December, and the original selection of the EPS position in late December 2006, Mr. Hamilton left the agency and went to another government agency.

Page 4 of 8

DECLARATION

I am not the selecting official for the positions within my operation. Those selections are made by the Associate Director of Logistics. During this time frame, William Harriger was Acting Chief, Logistics.

**The Complainant alleges management (John Reagan and James Falcone) purposely had the EPS vacancy announced while he was on a detail, making it impossible for him to apply. Please respond.**

Mr. Falcone's involvement was only to authorize Logistics to fill the EPS vacancy. He had no involvement in the announcement process. That is a routine procedure.

I announced the position at the first opportunity available in September, 2005. I had no first hand knowledge of his work assignments. At that point in time, Mr. Hamilton was working in the Operations Directorship in Area 3, headed by Betty Childress as the Associate Director. Mr. Hamilton's work assignments would have followed the Operations chain of command, and to the best of my knowledge, Chadwick Pickeral, Chief of Strategy and Portfolio Section, was his first line manager; and Karen Bryant, Territory Manager for the New Carrolton Territory, was his mid-level manager throughout this time frame.

**Did you know the Complainant was on a one week FLRP training detail in San Diego and was in the field providing support and coordinator for a safety program evaluation when the EPS vacancy cited above was announced?**

As stated earlier, I had no first hand knowledge, nor ability to influence Mr. Hamilton's work assignments at the time of the EPS announcement.

The external process used to announce agency vacancies (USAjobs.com) has a process for candidates who are interested to be informed of jobs they may be interested in to receive notice as vacancies become available. They are notified through an automated e-mail process.

As I had one of my employees in this same FLRP class as Mr. Hamilton, I was aware that the first FLRP session was conducted in San Diego in December, 2005, two months after the announcement for the EPS vacancy announcement closed.

**What impact did the Complainant's training detail and field visit have on the timing of the vacancy announcements cited? Be specific.**

By the documented timeframes of the vacancy announcements, the conditions under which they were announced, and the limited information available to me about Mr. Hamilton's work assignments for the period in question, there appears to be no impact

Page 5 of 8

116

DECLARATION

or relationship. Mr. Hamilton received due consideration for the Industrial Hygienist position announcement for which he applied in April, 2005.

As for the Environmental Specialist Position, the time frames of the announcement-(September 2005) do not coincide with the timeframes for the beginning sessions of the FLRP training (December 2005). As stated earlier, I have no first hand knowledge of the nature of his work assignments as they relate to the field visit mentioned- That would have been under the control of his Area and Territory Management team.

**Did you ever imply during a conversation with Gary Hamilton that it would be a waste of time for the Complainant to apply for the EPS position?**

I do not recall having any conversation with Mr. Hamilton regarding the EPS position.

**To your knowledge, did Mr. Falcone ever tell the Complainant they could advertise the position anyway they wanted to? If so, how did you know and what did you know about the circumstances surrounding the alleged statement?**

I have no knowledge of any discussion held between Mr. Falcone and Mr. Hamilton.

**Have you filled other grade 14 Environmental Protection Specialist positions during the past 2 years? If so, when, who (full name) was selected? Were you the Selecting Official and if not, do you recall who was?**

This was a brand new program for the Agency. This was the first announcement we had and we reassigned Cynthia Duffield from Industrial Hygienist position to this position once the first selectee resigned suddenly. This is the only EPS position we have created since the beginning of the program.

**The Complainant alleges there is an internal pattern and practice of cascading emails of job opportunities from the staff assistant HQ REFM, to AD's, to TM's, to Section Heads, then finally to frontline employees and that no notice of the Environmental Protection Specialist vacancy was cascaded down as normally practiced. Please respond.**

I do not recall whether or not any such message was sent. That process is controlled by our staff assistant that handles vacancy announcements, Fannie Braswell.

**Did you discuss announcing the vacancies cited with anyone else prior to taking an action and/or making a decision? If so, who, when, what was the discussion about and what impact, if any, did it have on your decision(s)?**

As mentioned earlier, the only discussions that I would have had were with Bill Harriger, my immediate manager at the time, and with Jim Falcone, entailing getting the

Page 6 of 8

117

DECLARATION

authorization for the FTE to get the position announced and filled. When we got the authorization to announce and the paperwork submitted, I advised my immediate staff.

**Regarding the Complainant's allegation (3) that he was forced to constructively discharge himself, state your involvement in, or your knowledge of, the matter.**

**Describe the events that led up to the matter in chronological order.**

I didn't know he left the Agency until after it occurred. As stated earlier, he worked for the Operations side of the function at that time and I would have no knowledge or involvement in any matter regarding the nature of Mr. Hamilton's employment or work assignments.

I believe that the Area Director may have apprised my Associate Director of his departure and the Associate Director advised me. My understanding was that he applied for a position in Department of Labor and had been competitively selected.

**Are you aware of other employees who have claimed they "constructively discharged" themselves from the Agency during the past 2 years? If so, who were they (name/title), when did this occur, who initiated it, and what was the nature of the action that separated them from the Agency?**

No. First time I have heard the term.

**Do you have knowledge of the Complainant's race? If so, what did you know, how and when did you first know it?**

Probably the first time I met Gary, I realized he was Black. That would have been when I was introduced to him in the fall / winter of 2001.

**Do you have knowledge of the Complainant's prior EEO activity? If so, what did you know, how and when did you first know it?**

No.

**Was the Complainant's race and/or prior EEO activity a consideration in any of the actions you took and/or the decisions you made in these matters? Please explain your response.**

No.

Page 7 of 8

118

DECLARATION

**Were any of the actions you took and/or the decision you made in these matters done to subject the Complainant to disparate treatment and/or retaliation? Please explain your response.**

No.

**Are there witnesses to these events?  If so, who are they and specifically what did they witness?**

N/A

**Do you have any documentation regarding the claims contained in this EEO complaint?  If so, what is it?  Please provide copies.**

No.

**Do you have any other information that would shed light on these issues?  If so, what is it?**

Not at this point in time.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 22 day of January,2007, at Arlington, Virginia.

_____
(Signature)

John C. Reagan
Supervisory Management and Program Analyst
Agency Wide Shared Services
Real Estate and Facilities Management
Internal Revenue Service
2221 South Clark Street
Arlington, Virginia  22202-3745

Page 8 of 8

**119**

CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing motion to dismiss or, in the alternative, to transfer this case to the Eastern District of Virginia to be served by first-class mail, postage prepaid, this 25th day of October, 2007, on:

Mr. Gary Hamilton
P.O. Box 1201
Waldorf, MD 20604

/s/ *Fred E. Haynes*

Fred E. Haynes, D.C. Bar # 165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
(202) 514-7201